UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIE ANTHONY, ULYSSES
WILLIAMS, MAMIE S. WILLIAMS,
LISET D. ZALAYA, JOSE LUIS
CUIN, MARY LINDA SANDERS,
KAY WILLIAMS, BARBARA
FULLER, ROSIE PERRY,
REGINALD J. GAVIN, SR. ,
MARY WILLIAMS, JUANITA
WILLIAMS, ZORA WALKER, IDA
LAWSON, WYNETTA MOBLEY,
FREDDIE COMMODORE, WARREN
ADKINS, JR. , ETHAN BULGER,
TAMMY MATHIS, ROGER
ROBINSON, ANTONIO DUMORNAY,
and ULYSSES MITCHELL,

   Plaintiffs,

v.           Case No: 2:16-cv-543-FtM-99MRM

CITY OF NAPLES, a political
subdivison of the State of
Florida and 7-ELEVEN, INC.,

   Defendants.

_____

**OPINION AND ORDER**

  This matter comes before the Court on plaintiffs' Amended Renewed Motion for Preliminary Injunction (Doc. #24) filed on October 25, 2016. The City of Naples filed a Response in opposition (Doc. #33) on November 8, 2016. Following the intervention of 7-Eleven, Inc., 7-Eleven also filed a Response to plaintiff's Motion for Preliminary Injunction (Docs. ##34, 35) on November 21, 2016.

I.

Plaintiffs initially brought this suit in the Circuit Court of the Twentieth Judicial Circuit of Florida in and for Collier County on or about June 15, 2016 against the City of Naples ("City"). (Doc. #1-1.) Defendant removed this action on July 7, 2016 on the basis of federal question jurisdiction under 28 U.S.C. § 1331. (Doc. #1.) After removal, plaintiffs filed a Second Amended Complaint (Doc. #11) and an Amended Second Amended Complaint (Doc. #14) asserting the following claims: (1) Temporary and Permanent Injunction for Federal Fair Housing Act Violation; (2) Temporary and Permanent Injunction for Federal Due Process Violations; (3) Declaratory Relief for Federal Civil Rights Violations; (4) Declaratory Relief for Procedural Due Process Violations; and (5) Temporary and Permanent Injunction Under Florida Fair Housing Act. (Id.)

Plaintiffs assert that they all are minority residents of a fifty-year-old neighborhood in Collier County, Florida, referred to as "River Park East." (Id. ¶ 4.) River Park East and a small nearby neighborhood together comprise the only minority community in the City of Naples. (Id. ¶ 11.) Plaintiffs bring this action to challenge an Ordinance passed by the City allowing for the demolition of an old, unoccupied gas station and the subsequent

construction of a new, 24-hour convenience store and gas station at the corner of River Park East. (Id. ¶¶ 12, 18.)

On October 25, 2016, plaintiffs filed an Amended Renewed Motion for Preliminary Injunction seeking to "temporarily rescind Ordinance A, thereby stopping any demolition or construction work on the subject property and stopping the City staff's process of approving the construction permit, until this case is resolved on its merits." (Doc. #24, p. 6.)

## II.

In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest." Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1273 (11th Cir. 2013) (citing Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011)). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176

(11th Cir. 2000) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

**A. Substantial Likelihood of Success on the Merits**

The first factor in determining whether a preliminary injunction should issue is whether the plaintiffs are likely to prevail on the merits of their claim(s). In support of this factor, plaintiffs point the Court to the arguments presented in response to the City of Naples' Motion to Dismiss. (Doc. #24, ¶ 16.)

**1. Fair Housing Act Violation**

Plaintiffs assert claims under the Federal and Florida Fair a Housing Act.[1] (Doc. #14, ¶¶ 28-37, 48-53, 65-74.) The Federal Fair Housing Act ("FHA" or "Fair Housing Act"), 42 U.S.C. §§ 3601-3619, forbids discrimination in making available or providing services related to housing. The Fair Housing Act states in pertinent part:

> [I]t shall be unlawful—
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

---

[1] The Florida Fair Housing Act and the Federal Fair Housing Act are "substantively identical." Loren v. Sasser, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002). As such, the analysis applicable to the Federal Fair Housing Act claim is equally applicable to plaintiffs' Florida Fair Housing Act claim.

Id. § 3604(a). Congress's purpose in enacting the Fair Housing Act was "to provide, within constitutional limitations, for fair housing throughout the United States." Id. § 3601.

In order to state, and ultimately prevail on, a claim under the Fair Housing Act, "a plaintiff must demonstrate unequal treatment on the basis of race that affects the availability of housing." Bonasera v. City of Norcross, 342 F. App'x 581, 583 (11th Cir. 2009) (quoting Jackson v. Okaloosa County, 21 F.3d 1531, 1542 (11th Cir. 1994)). A plaintiff may establish a violation of the Fair Housing Act by proving "(1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation." Id. (citations omitted). "[A] showing of a significant discriminatory effect suffices to demonstrate a violation of the Fair Housing Act." Jackson, 21 F.3d at 1543 (citation omitted). A discriminatory effect can be shown in two ways, "it can demonstrate that the decision has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." Bonasera, 342 F. App'x at 585 (citation omitted).

Plaintiffs allege that the City's approval of the site plan at the southeastern corner of River Park East for the construction of an all-night convenience store and gas station (7-11)

disparately impacts River Park East's minorities. (Doc. #14, ¶¶ 12, 17.)[2] Plaintiffs allege that the City, through the passage of ordinances such as the site plan for the 7-11, has enabled and encouraged the "expulsion and displacement of minority residents from their own neighborhoods and replacing them with white neighborhoods." (Id. ¶ 20.) Plaintiffs allege that the City's actions or inactions have reduced the price of their property, causing white investors to purchase the property, who in turn raise rent, and eventually will push them out of their neighborhood. (Id. ¶ 23.)

Plaintiffs cursorily allege in their Amended Second Amended Complaint that the site plan approval "has made unavailable or denied dwelling to Plaintiffs because of race, color, or national origin, as these actions and omissions disparately impact Plaintiffs." (Id. ¶ 31.) However, there are not any factual allegations in the Amended Complaint that the City has treated the

---

[2] Plaintiffs allege the following statistics: the City has not approved any other all-night gas station in recent years, the City has not approved the construction of a convenience store or gas station located in such close proximity to permanent residences, the City has not approved any other gas station in such close proximity to a navigable waterway, the City has not approved any other convenience store/gas station at the sole entrance to and exit from a residential neighborhood, and Collier County has not approved any site plans in such close proximity to permanent residences or navigable waters. (Id. ¶ 19.) Collier County has not been named as a party to this lawsuit. (See Doc. #14.)

residents of Park River Easy unequally on the basis of race that affects the availability of housing.  (See Doc. #14.)  Instead, plaintiffs assert that the City's approval of the 7-11 site plan, which will allow for the demolition of an old, unoccupied gas station and the subsequent construction of a new gas station at the corner of River Park East, will subsequently cause a decrease in plaintiffs' property values, which will cause white investors to purchase the properties, who will then raise the rent to a rate that plaintiffs can no longer afford, which will result in plaintiffs being dejected from their homes.  The Court finds the site plan approval is far too remotely related to the housing interests that are protected by the Fair Housing Act to establish a substantial likelihood of success on their Florida and Federal Fair Housing Act claims.

The City did not "make unavailable or deny a dwelling to any person" within the meaning of the Fair Housing Act.  Plaintiffs, in effect, request this Court to hold that every practice having the effect, no matter how minor, of making housing more difficult to obtain, is a violation of the Fair Housing Act.  The Court finds that plaintiffs have not established a substantial likelihood of success of extending the Fair Housing Act's breadth this far.  In order to allege a claim under the Fair Housing Act there must be a closer causal connection between the act and the

effect on the availability of housing. Unlawful practices under the Fair Housing Act include "zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification." Tex. Dept. of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2521-22 (2015) (citing Huntington v. Huntington Branch, NAACP, 488 U.S. 15 (1988) (invalidating zoning law preventing construction of multifamily rental units) and United States v. City of Black Jack, 508 F.2d 1179 (8th Cir. 1974) (invalidating ordinance prohibiting construction of new multifamily dwelling)). See also Jackson, 21 F.3d at 1543 (finding plaintiffs stated a claim for discriminatory effects on the availability of housing for excluding public housing from an unincorporated 5-mile area). These situations, however, have a much more direct causal connection between the availability of housing and the disputed action. Here, the direct causal connection is missing. Numerous actions, private and official, may affect housing in some remote manner, but the Fair Housing Act requires a closer casual link between the availability of housing and the disputed action than is present in the underlying case.

Accordingly, the Court finds that while plaintiffs' Amended Second Amended Complaint does contain allegations of disparate treatment – treating residents of River Park East different than

predominately white neighborhoods – it is not substantially likely that these allegations relate to the availability of housing. The availability of housing is the focus of the Federal Fair Housing Act. 42 U.S.C. § 3604(a). Therefore, the Court finds that plaintiffs have not shown a substantial likelihood that the City's actions here affect plaintiffs' availability of housing in a manner implicated by section 3604(a) of the Fair Housing Act. See Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180 (4th Cir. 1999) (finding decision for placement of highway too remotely related to the availability of housing to support a claim under the FHA). Accordingly, the Court finds that plaintiff has failed to show a substantial likelihood of succeeding on their Federal Fair Housing Act claims.

This analysis equally applies to plaintiff's Florida Fair Housing Act claim. Loren, 309 F.3d at 1299 n.9. Accordingly, the Court finds that plaintiffs have also failed show a substantial likelihood of succeeding on their Florida Fair Housing Act claim.

**2. Federal Due Process Violations**

Counts II and IV of plaintiffs' Second Amended Complaint request Temporary and Permanent Injunction and Declaratory Relief for Federal Due Process Violations. (Doc. #14, ¶¶ 38-47, 54-64.) Plaintiffs allege that Ordinance B [3] violates plaintiffs'

---

[3] The Ordinance obligates the City to provide notice of

procedural due process rights under the Fourteenth Amendment of the United States Constitution because it fails to provide adequate notice and meaningful opportunity to be heard regarding issues affecting their life, liberty, and property and that the site plan required greater notice than that provided in Ordinance B. (Id.)

The due process clause requires that the deprivation of life, liberty, or property must be preceded by notice and the opportunity for a hearing. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citing Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)). "A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." Zisser v. Fla. Bar, 747 F.Supp.2d 1303, 1317 (M.D. Fla. 2010) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Failure to establish any one of these elements is fatal to a plaintiff's procedural due process claim under § 1983. Id. Land use rights, as state-created property rights, are protected by the procedural due process rather than substantive due process. DeKalb Stone, Inc. v. County of DeKalb, 106 F.3d 956, 959-60 (11th

---

hearings of certain proposed site plans by "(a) mailing to owners of property within 500 feet of the site at least 14 days prior to the hearing of the Planning Advisory Board and (b) publishing notice once in a newspaper of general circulation at least 15 days prior to the public hearing. (Doc. #14, ¶ 15; Doc. #34, p. 8.)

Cir. 1997). "[N]o procedural due process claim exists until a sufficiently certain property right under state law is first shown." Greenbriar Village, L.L.C. v. Mountain Brook, 345 F.3d 1258, 1265 (11th Cir. 2003).

The unavailability of adequate state procedures to remedy a procedural deprivation is an element of a procedural due process claim – as opposed to a mere exhaustion requirement. Flagship Lake Cty. Dev. No. 5. LLC v. City of Mascotte, 559 F. App'x 811, 815 (11th Cir. 2014).

> If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. And, to be adequate, the state procedure need not provide all the relief available under section 1983. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.

Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (internal citations omitted). Certiorari is an adequate state remedy if the remedy is available to plaintiffs. Id.

The proceeding with which the plaintiffs have issue — the decision approving the 7-11 site plan — is characterized as a quasi-judicial proceeding and subject to judicial review by the grant of certiorari by the circuit court.⁴ Broward County v.

---

⁴ Courts have held that a party's exclusive remedy to obtain reversal of the city's decision regarding a site plan is by petition for writ of certiorari. Palazzo Las Olas Grp. LLC v.

G.B.V. Int'l, Ltd., 787 So. 2d 838, 842-43 (Fla. 2001); Palazzo Las Olas Grp. LLC, 966 So. 2d at 500-01 (citation omitted). A party must seek certiorari review within thirty (30) days of the decision or hearing at issue. Am. Riviera Real Estate Co. v. City of Miami Beach, 735 So. 2d 527, 528 (1999) (citing Fla. R. App. P. 9.020(a)(3), 9.100(b)-(c), 9.190(b) & advisory committee's note)). During the certiorari proceeding, the following issues are reviewable by the circuit court: "(1) whether the agency afforded procedural due process; (2) whether the agency observed the essential requirements of law; and (3) whether competent, substantial evidence supported the agency's findings." Palazzo Las Olas Grp. LLC, 966 So. 2d at 501 (citation omitted); see also G.B.V. Int'l Ltd., 787 So. 2d at 843.

Within Count II, plaintiffs allege that "[t]here is no adequate remedy at law, as damages are difficult or impossible to calculate, damages cannot ameliorate the life, health and safety risks enabled by the site plan, and damages cannot prevent expulsion of Plaintiffs from their own neighborhood." (Doc. #14, ¶ 45.) While the beginning portion of this paragraph may have

---

City of Ft. Lauderdale, 966 So. 2d 497, 502(Fla. 4th DCA 2007) ("[W]e hold that while any direct challenge seeking to overturn the Commission's decision denying site plan approval had to be sought via the filing of a petition for writ of certiorari, this did not preclude [plaintiff] from bringing a civil suit, wherein it sought relief on matters beyond those appropriately addressed during the certiorari proceeding.").

been sufficient to allege that there were no adequate state procedures to remedy the alleged procedural deprivation, it is clear by the remainder of the sentence that plaintiffs are referring to remedies at law, i.e., damages, as opposed to equitable remedies, in relation to their request for a Temporary and Permanent injunction. This is insufficient to allege that state procedures were unavailable to remedy the procedural deficiencies and the Amended Second Amended Complaint is otherwise devoid of allegations that state procedures were unavailable to remedy the procedural deficiencies. Accordingly, the Court finds that plaintiff has failed establish a substantial likelihood of succeeding on their procedural due process claim in Count II.[5]

Count IV, seeking declaratory relief for procedural due process violations, is similarly deficient and does not even contain an allegation that there are "no remedies available at law." (Doc. #14, ¶¶ 54-64.) Accordingly, the Court finds that plaintiffs have failed to establish a substantial likelihood of succeeding on their procedural due process claim in Count IV.

---

[5] In plaintiffs' Response to defendant's Motion to Dismiss, plaintiffs assert that because this action was filed fewer than 30 days after the City's approval of the site plan, plaintiffs can amend their complaint to add a claim under a Writ of Certiorari. (Doc. #18, p. 19.) At this point however, plaintiffs have requested leave to make any such amendments.

Accordingly, plaintiffs' Motion for Preliminary Injunction (Doc. #24) is denied.

Accordingly, it is hereby

**ORDERED:**

Plaintiffs' Amended Renewed Motion for Preliminary Injunction (Doc. #24) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __1st__ day of December, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record